This is case number 4100404 Lieberman v. Liberty Healthcare. For the appellant, Mr. Stein, and for the appellee, Mr. Unrath and Pruitt. Have you guys talked about your time? Are you both going to be arguing then? I'm going to take your argument in a minute. There's time left. I'll take the reviews from the available peer groups. Okay. Please proceed. Good morning. May it please the court. My name is Bill Stein, and I represent the plaintiffs Lieberman, Boyd, and Penter in this matter. These three men are Illinois citizens who, after fully serving their prison sentence, faced a second trial under the SVP Act, where they were found to be eligible for civil commitment under section 15 of the SVP Act, and civilly committed because they supposedly suffer from a disorder that is called paraphilia not otherwise specified, sexually attracted to non-consenting women. I'll just refer to that mouthful as paraphilia non-consent for short. In the years following their trials, my client's disorder was re-diagnosed annually and repeatedly validated under section 55 of the Act, which requires those annual reassessments. More recently, my clients learned that this disorder does not in fact exist, though, in the authority from which the defendants say that they derived it, that being the DSM, the Diagnostic and Statistical Manual of Mental Disorders, and in any event cannot be based on past criminal behavior alone, as the defendants say that it is. My clients then filed a medical malpractice complaint under common law against the defendants based on their negligent post-trial re-diagnoses and validations of this so-called disorder. The judgment that's on review here today is that the plaintiff's complaint is collaterally estopped by their original civil commitment trial verdicts because those trial verdicts, according to the court below, adjudicated, and I quote, whether or not the plaintiffs have been properly diagnosed as suffering from a mental disorder. Close quote. Your Honors, we submit that if this court affirms the collateral estoppel ruling below, civil commitment proceedings across the state will be thrown into a state of chaos, as respondents are forced to litigate the common law propriety of their evaluators' practices in the same proceeding where the state is simultaneously litigating its statutory civil commitment petition in the context of a different cause of action under a different burden of proof against different parties and seeking a different remedy. Now, we all know what the standard of collateral estoppel requires. As the Illinois Supreme Court said it succinctly in the Novak decision, and I quote, the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which might have been litigated and determined. Now, in our briefs, our argument is very simple and straightforward, and so I'll only spend but a minute recapping that. We demonstrated that collateral estoppel cannot apply in this case to the underlying trial verdicts for at least two compelling reasons that are really undisputed in this case. Number one, the complaint from which the negligence that we... the acts that gave rise to the negligence about which we complained had not yet occurred at the time of the trials that are supposedly the basis of the estoppel ruling in this case. That means the negligence at issue in the complaint could not have been litigated at those trials because it had not yet occurred at the time of those trials. To this self-evident fact, the plaintiffs even added in the undisputed affidavits of each of their former trial counsel, swearing that they did not litigate the medical malpractice issue that is at stake in this litigation during their client's then civil commitment trials. But they did litigate, at least in Lieberman's case, whether this was a sufficient diagnosis. What they litigated in Lieberman's case, which is the only case of the three that we know of where something like this was litigated, was whether or not he met the criteria for the disorder itself. And that is always in dispute among psychologists. But once the criteria are established, the question is, does this person meet these criteria? That's a totally different question from this case, which says the criteria themselves don't exist because this disorder doesn't exist. It has no criteria. Didn't Justice McBride determine specifically in his first case on appeal that she wrote, she's written two opinions, one in May of 2010 and one in September. In the May 2010 opinion, didn't she specifically find, based on arguments you made on appeal, you were the counsel on appeal, Mr. Stein, you made the same arguments. And she found against you. She found that this was a legitimate diagnosis under the DSM. Or, in the alternative, that the DSM is not all inclusive. No, she did not find that this specific issue was, she did not find that it was a legitimate diagnosis. What the court found was that Mr. Lieberman was found to meet the criteria for the disorder, assuming that those criteria are legitimate and that the disorder really exists. That was what was found. There was never a medical malpractice finding. Well, you may characterize it as that, but we don't care what you call it or what you label it. It's the underlying issue that's really important because you can label it any way you want to. But there was expert testimony the way I understood and read the record. There was expert testimony from one psychiatrist and there was expert testimony on the other side of the issue by two or three psychiatrists and the trial court found, Judge Porter found, one side to be more credible about the existence of this diagnosis and disorder and McBride upheld that on appeal. Okay. Now I think I know what proceeding you're talking about. I thought you were talking about the appeal from the underlying civil commitment trial. It sounds like, Justice Polk, you're talking about the probable cause appeal. You're talking about the appeal from Mr. Lieberman's probable cause finding, which happened after the trial and after that appeal. Is that correct? Right. And isn't your argument that we're not talking about what was litigated at the first commitment trial, we have new actions? Yes. Okay. So with respect to whether or not this issue was determined by the probable cause finding that Judge Porter entered in Mr. Lieberman's case, the answer to that is also no. And the reason is this. First of all, that probable cause finding was not a medical malpractice trial or hearing. That was not the question before the court. That probable cause finding arises under Section 60 and 65 of the Act, which allowed Mr. Lieberman and others who are civilly committed to petition for conditional release or discharge if they have reason to believe that over time their disorder has remitted to the point where they're no longer substantially likely to re-offend or be healed altogether. That is the setting in which that probable cause petition was heard. Now the question in that trial was, is there probable cause to believe that Mr. Lieberman is no longer eligible for commitment, due in part to an argument that the disorder itself doesn't exist and was improperly diagnosed. And on that expert testimony was heard. Judge Porter did not rule, because there was no medical malpractice issue before him, on the professional propriety of that diagnosis. All he found was there's a jump ball between the experts on whether the disorder exists or not, and therefore he said there's no probable cause in light of that to find that Mr. Lieberman is no longer eligible for commitment. That ruling, incidentally, was just sent back on appeal to the Illinois Supreme Court to the First District for reconsideration. Not on that issue, but on the issue of the standard for probable cause, wasn't it? Well, because you could argue that it's relevant here, because I could see somebody saying that, as Your Honor is suggesting, inherent in that ruling somehow is a verdict on whether the disorder exists or not, perhaps you could argue Judge Porter found that there isn't even enough evidence to say the disorder doesn't exist, therefore there's no probable cause. I submit that that's not exactly what he ruled, but in case there was an inclination to read that decision in that manner, we now have the Illinois Supreme Court sending that back down for reconsideration, because the underlying question consistent with that logic would be, if one expert says that the disorder doesn't even exist in the manual and is improperly diagnosed, and another says, yes it does, it is a recognized disorder, there must have probable cause to have a full trial on that issue. Now again, that trial is not addressing the question of whether the people who made the diagnosis committed professional malpractice. But your claim of professional malpractice is based on your argument that this is a non-existent diagnosis. Correct. Judge McBride, Justice McBride said in her opinion that the trial court found that the diagnosis of paraphilia NOS non-consent was a mental disorder that satisfied the requirements of the Act. It sounds to me like that was a litigated issue. The exact same issue you're attempting to litigate here. Number one, just because the trial court said that it believes that there isn't probable cause to think that the disorder is illegitimate is a different finding than saying that the trial court heard a case that questioned the professional propriety of that diagnosis's rendering in the first place and ruled that there was no professional malpractice committed. But again, all the trial court said was there's no probable cause to think that Mr. Lieberman is not eligible for civil commitment anymore. That was what that proceeding was about. It couldn't have been about anything else because Section 60 and 65 of the Act do not permit us to have litigated a common law medical malpractice claim. Mr. Stein, I understand your argument. Clearly your medical malpractice claim is not the same technical claim that was litigated, but the underlying evidence and issues is the same. I don't understand why you don't see that. I do see it. I see how you could construe it that way, but as I tried to just explain a minute ago, I think there's a critical difference there between what was found by Judge Porter and affirmed by the First District and now sent back down by the Illinois Supreme Court. And that's a critical fact. Even if you accept the argument that I think Your Honor is trying to make here, I'm not making any argument. I'm trying to understand yours. I apologize, Your Honor. I don't mean to put words in your mouth. But even if I'm understanding what Your Honor is suggesting, the fact that this was ruled on definitively, where we stand now in that litigation is the Illinois Supreme Court looked at that and said, no, we don't agree. There may be probable cause here to believe that we need to move to a full trial on whether or not, if you will, under your question, this disorder really exists and therefore Mr. Lieberman really suffers from it and shouldn't be civilly committed anymore. And at that subsequent trial, there may be other evidence presented that would run more along the lines of how responsible is it to make this diagnosis and therefore is it really credible and therefore should we believe Mr. Lieberman really suffers from it and should continue to be detained. But we haven't gotten to that point. The point we're at now, due to the Illinois Supreme Court's ruling, is Judge Porter made a mistake. And the First District made a mistake when it affirmed him because there's enough here to think that this disorder doesn't really exist based on the testimony of two conflicting experts. So we don't really know what the outcome of that is yet. It hasn't been definitively resolved. And that goes to the defendant's argument on the parallel proceedings point that they made. Which I guess we've now addressed. I would just add to that, these proceedings are still ongoing of course and collateral estoppel only applies to proceedings that have been resolved. It doesn't apply to ongoing proceedings. I hope I've answered your Honor's question. Now, in response to our arguments regarding the temporal impossibility of having collateral estoppel in this case and the affidavits that had to be accepted as true, but of course were not apparently, the defendants raised a series of arguments that I would suggest to this Court are concerning. Because they threaten the constitutionality of the Act and are in direct conflict with the actual language of the statute, which is meant to embody the very principles that make SVP commitments constitutional to begin with. Consider, for example, the defendant's argument that trial and post-trial findings are so interconnected with one another that post-trial findings are derived from and authorized by the initial trial verdicts. This argument is made to somehow skirt around the problem of the negligence that we complain of now did not occur yet at the time that the trials were already complete. The defense are saying that doesn't matter. It's all one and the same issue. Once you have a trial verdict, well to put it succinctly, once an SVP, always an SVP, according to this argument. And that is exactly what the U.S. Supreme Court has said in Kansas v. Hendricks is not permissible. That assumption is not permissible. Once an SVP, not always an SVP, because it is universally understood in the scientific community, and that principle has been embodied in the law, that people's mental condition changes over time. And civil commitment, therefore, cannot be a lifelong sentence because it would run afoul of double jeopardy concerns. The individual has to be re-evaluated periodically on a regular basis, usually annually, some states require it every two years, and that's been sustained as well as appropriate, to see if they still have this mental disorder that would support civil commitment. We see this requirement embodied not just in the holding in Hendricks, but in the Act itself. Sections 55 requires annual re-evaluations. Sections 60 and 65, as we've discussed already, permit the respondent to petition for release if he feels after a period of time that his condition has changed and he no longer is eligible for commitment. The point of this is to show that if once an SVP, always an SVP, the holding in Hendricks, Sections 55, 60, and 65 of the Act would essentially be meaningless. There would be no reason to have re-evaluations and to establish anew, as one court put it, if the respondent's mental condition still supports civil commitment. That argument cannot be sustained because that is the constitutional linchpin of the SVP Act. It is not a life sentence. It's only a temporary commitment that has to be reconfirmed periodically with new evaluations. Although it was said in DICTA, the only case we found in Illinois that comes close to this was the Illinois Appellate Court's decision in Lange, which said that successive commitment hearings because of these constitutional requirements must be viewed as de novo proceedings. And in that case it held that res judicata, therefore, does not apply. I would submit that that same logic applies to collateral estoppel. And I would also urge the Court to look at our argument on the Munoz case, which did specifically address res judicata and collateral estoppel, and I think is directly on point here, although obviously not outcome determinative. In addition to its constitutional problems, the interconnectivity argument that the defendants make is itself judicially estopped by the prior success of the contrary position that the state of Illinois took in the Boutroff decision. As you know, many of the defendants in this case are represented by the Attorney General's office. And that raises a series of interesting problems, but we won't get into those given the fact that the evaluators are supposed to be independent and not working for the state. But be that as it may, in Boutroff... Counsel, let me interrupt you for a second. I don't feel well. I'm going to step out. Can you take over for me? And I will listen either out in chambers or listen to the tape. I apologize. I hope Your Honor feels better. You may continue. Thank you, Your Honor. In Pickle v. Boutroff, the state of Illinois asserted that pre- and post-commitment trial findings apply to different proceedings and a different section of the Act with a different purpose. We agree. In fact, they added, and it's worthy of a quotation here, it would be ludicrous for the courts to find that the pre-commitment phase and the post-commitment phase are interrelated. Clearly, that is directly opposite to the interrelated argument that they've advanced in this case and is therefore in satisfaction of the requirements for judicial establishment. Then we come to the argument that we've touched on now in the arguing in parallel proceedings that the negligence issue in this case should affect the probable cause determination in theirs. I would suggest, in addition to what I've already said to Your Honor, Justice Polk, that this is an improper new argument on appeal and should not even be considered by this Court to begin with. Moreover, collateral estoppel, of course, applies to sequential and not simultaneous actions. But I wish to stress, beyond these immediate problems again, that Mr. Lieberman and Mr. Loy's conditional release and discharge proceedings differ from the present matter because they seek probable cause for release under those respective 60 and 65 sections. This action concerns different party defendants, arises under common law, not the Act, is governed by a different burden of proof, concerns medical malpractice, and seeks monetary damages, not a liberty interest. This is a common law med mal claim and no matter what the fate below, if it is in favor of the plaintiffs, it cannot compel their release. This is not an habeas proceeding. Then we come to the heck rule argument, which takes up the substance of at least one of the defendants' brief and was adopted in whole by the other party defendants. Let me say a word about this. The defendants asked this Court literally to, quote, unquote, adjust the law as it is and adopt the federal heck rule. Now any court should be leery of such a request given the fact that it is not this body's job to adjust the law as it presently exists. That's done down the street of the Illinois legislature. That said, though, it is clear that heck does not apply in this case from the get-go because it only prohibits federal civil verdicts from invalidating earlier state civil verdicts. And neither party... It has been applied by some state courts to SBP cases, hasn't it? Never has it been applied as between state civil verdicts and neither party has been able to find, we haven't, in none of the cases that the defendants have cited, show a state civil verdict applying the heck doctrine to bar an earlier state civil verdict. They've all been federal court decisions applying the heck doctrine. So I'm just talking about... I'm talking about HUBS, the Alamayo, and the Huftile. They dealt with state SBP proceedings. Okay, they did deal with state SBP proceedings, but with respect to the Huftile decision, I would say, first of all, it is, of course, a non-binding federal decision. It doesn't apply heck to state SBP proceedings. It's a decision applying a federal ruling to a prior state ruling. All right, what about Yount v. Sacramento? I'm not familiar with that case, Your Honor. I apologize for that. That's a California Supreme Court case. Was that cited in the defendant's brief? I'm not sure. I don't remember it being, and that's why I apologize for not being familiar with that case, Your Honor. Your time has expired. You'll have some additional time for rebuttal. Thank you, Your Honor. Mr. Truitt. May it please the court, I'm Eric Truitt, Assistant Attorney General  I represent defendant appellants Bednarz, Weir, Rucker, and Buck. This is a California Supreme Court adopting heck, but the underlying judgment in that case was criminal. So plaintiff appellant is correct that no state court has applied heck to a civil court, to a civil judgment, but federal courts apply heck to civil and criminal judgments, and several state courts have adopted heck as a rule of law state law. But we need not go as far as heck. There's principles in Illinois law, the cases of Griffin v. Goldenhurst and other cases, that in essence apply estoppel to a legal malpractice action where the criminal defendant seeks to sue his or her trial attorney for legal malpractice. And the rule of law there that's already the rule of law in Illinois is that because of collateral estoppel concerns, your cause of action for legal malpractice does not apply. And so the underlying judgment is overturned. So in essence there, the underlying judgment estops you from arguing actual innocence. And I'd say that, along with the heck cases, is applicable to this case. And I think the introduction in plaintiff's argument quite eloquently established that. Those cases are dismissed without prejudice, aren't they? Yes. And if you were to adopt the alternative rationale of our brief, you would have to remand with instructions to dismiss without prejudice. And then if they were successful in their Section 65 proceedings or in a 214.01 proceeding, then their cause of action for professional malpractice would accrue at that time. But as I was saying, the introduction to his argument, I think, illustrates the problem here of having so many proceedings flying around at the same time. You have the appeals for the SVP trial, and then because of the way the Act is structured, there's an annual reexamination, and there's some sort of judgment attached to the annual reexamination, whether it be the denial of a petition for discharge or just a no probable cause finding. Each of those are separate judgments. Those are all appealable. There's also the possibility for a 214.01 petition, which at least Mr. Liebman has filed. That's another judgment. And at the same time, they want to introduce a tort suit that potentially conflicts with all of the other findings and all of the other proceedings that are ongoing. I'd submit, to avoid this kind of chaos or confusion, it makes a lot more sense to have the tort law say, you can bring this type of claim, but you can't bring this claim until you've already shown your innocence or the fact that you're no longer a sexually violent person in the appropriate form. On the criminal side of things, that's what the Post-Conviction Act is for. On the SVP side of things, that's why we have the petitions for discharge as well as the petitions for conditional release in Sections 60 and 65 of the Act. When can collateral estoppel ever apply in a case like this? It seems to me like there's never an end. That was my concern. If you accept the position that he's taken in his brief about this being a different proceeding, a different judgment, a different window of time, I'd be concerned that you could bring exactly the same suit every two years or so. Collateral estoppel assumes finality. Yes. But even based on what you're arguing, it seems to me like there's never going to be finality to a point where you could say collateral estoppel applies. Are you saying that in essence that if Illinois were to adopt something like the Heck Rule or apply the Griffin Rule to this context? I think that's different than collateral estoppel. That's almost like a stay of the underlying proceedings. It's not a stay, but in that vein, which is a little different. It's like you can't mount a collateral attack while your confinement has been held to be lawful, which is a little different than collateral estoppel. I see what you're saying.  what you're saying was in essence that even if the specific issue about whether or not paraphilia NOS non-consent is a valid diagnosis, certain elements of the claim can't possibly exist, can't possibly be proven at trial in this case in light of the underlying judgments that exist in these other cases. For example, they can't possibly show causation in this case, given the fact that the legal cause of their continued commitment is these ongoing judgments that they haven't otherwise undermined. The same thing with damages. If you look at the complaint, the only damages in the complaint stem from their continued commitment. There's no independent injury that they've asserted that come from simply receiving a diagnosis. It all stems from their continued commitment. As you see, the continued commitment results from the lawful judgment. If you look at the HECC decision, which obviously is not binding on this court, but is persuasive authority, HECC in essence says continued confinement does not count as an injury for purposes of Section 1983, which is a federal civil rights tort statute. So I think you can adopt that same kind of reasoning in this case for the estoppel finding. You can't claim damages from a lawful judgment that you haven't otherwise undermined. And here it's clear from the face of the complaint, the only damages that the plaintiffs have allegedly suffered all stem from lawful confinement. So I think that his introduction about the possibility for conflict or chaos if you force them to bring these cases in simply illustrates that federal and state courts have already developed a solution for this that is applicable in this case. I'd also like to address his points about the interconnectivity. I have a couple things to say about interconnectivity. And the first thing is that our argument was never once an SVP, always an SVP. Our point was simply that if you accept the theory that they've presented in this malpractice case, they're saying not only should they not continue to be committed, but they should have never been committed in the first instance. So there's an inherent interconnectivity between what they're saying now and what it would mean for their initial commitment proceedings. Because they're not saying that something has happened in the past five years that has meant that they were once sexually violent but they're no longer sexually violent. They're saying that this mental disorder never existed. In essence, it was a bogus or fake mental disorder. And there's no logical distinction between what they're saying now and what they would have said at their initial commitment proceedings were they aware or had counsel pursued this line of argument. So in that sense, these judgments are all interconnected because the underlying theory of this malpractice action strikes at the heart of all the commitment judgments. There are cases in which someone will concede, I once was sexually violent but now I've undergone the treatment programs available to me at the facility or my actuarial scores have gone down such that I'm no longer likely to commit a future act of sexual violence. But that's not really the case here. If they were to raise these arguments that they're raising in this malpractice case at their initial commitment hearing and they were correct, it would mean that they were never committed in the first place. So there's an inherent relationship between the proceedings now and the proceedings then because of the specific claims that they're raising in this malpractice complaint. You can't say, well, I could have been committed back then but I shouldn't be continually committed because it's the same argument. They're saying the mental disorder never existed. I'd also like to touch on the points about judicial estoppel. First of all, the people of the state of Illinois, in terms of the same parties or parties in privity, that condition does not apply. In addition, because of the constitutional requirement that the Illinois Attorney General served as the legal officer for the state, it's simply not possible to apply the traditional rules of conflict or ethics to the Attorney General's office. So, for example, oftentimes different attorneys in my office have different sides of the same suit. For example, if two agencies have a conflict between each other, that's in the case of Illinois EPA versus Illinois Pollution Control Board, that's the classic case on that point. But the more general point is simply that the people of state of Illinois are not party to this particular proceeding. The Illinois Attorney General represents different sides of the same conflict. I certainly have never represented the people of state of Illinois, and so the allegations of judicial estoppel aren't the same. Finally, as opposed to judicial estoppel, the point that I made about interconnectivity is the same here. We're not saying that once an SVP, always an SVP. We're saying that because of the arguments that they're making in this specific case that they're interconnected so that's not even the same issue that was argued or raised in the Bathroof case. I'd also like to speak a little as to our alternative rationale. Council argued that it's not the job of this court to adjust the laws, it's the job of the legislature. This is common law, and you know, in Griffin v. Goldenhurst and other Illinois cases that have adopted a similar rule for legal malpractice actions against criminal defense attorneys, those were court-adopted rules. Those were not rules that were mandated by the legislature. And as common law, you know, there is cause for concern for courts to be, you know, continually changing the law, but this is a newly published opinion dealing with this type of malpractice lawsuit. And so when the court is confronted with relatively novel circumstances, you know, it may be forced to adapt the existing law to deal with these changing circumstances. It is true that no state court has adopted HEC and also has said that the rule of HEC applies to civil court judgments. But it is also true that no state court has said that HEC does not apply to civil court judgments and there are federal cases that apply HEC to SVP proceedings. You know, the 9th Circuit case of HuffTile is the most instructive and there is, more importantly, there is absolutely no reason, the underlying reasons for the HEC rule and the underlying reasons for the rule of Griffin v. Goldenhurst are equally applicable in this case. You have the possibility of substantially conflicting judgments. On one side you would have a tort judgment, you know, that forces private parties to pay and the ultimate purpose for these rules is in effect whether the judgments are criminal or civil. And the second, the existence of a statutory scheme for securing release, that's an equal force here as well. In the federal context you have the federal habeas statute and the concern that motivated the rule of HEC v. Humphrey was that if you allow people to bring tort suits instead of using the habeas statute, you're in essence undermining all of the specialized procedures and requirements of the habeas statute. The same thing applies in the state context as to legal malpractice suits against criminal defendants. You already have the postconviction act. We don't want to undermine all of the requirements and procedures of the postconviction act by allowing people to raise the same types of claims in tort suits. And finally, in the SVP context, you have specialized release mechanisms in sections 60, 65, and 70 of the SVP act to allow this type of tort suit would in essence  all of the requirements and procedures that are already in effect. The final thing I'd like to say is that it is true that the ongoing proceedings do not technically stop this action, but I do think that they weigh quite heavily on the balance of equities. As we know, collateral stop was an inequitable doctrine, and the fact that the same exact issues are being litigated in parallel proceedings is a strong counter to the claims that they raised in their original brief about malpractice plaintiffs in particular being afforded every opportunity to pursue their claim and the general argument that they raised that it would be better  to pursue their claims than to pursue their claims. I think that that is true. I think that that is true. I think that that is true. I think that that is true. I think that that is the correct answer. I do not want to exclude college residents from participating in crime investigations and I think that that is        to exclude college residents from participating in crime investigations and I do not want to exclude college residents from participating     I     exclude college residents from participating in crime investigations and I do not want to exclude college residents from participating in crime investigations and    want    residents from participating in crime investigations and I do not want to exclude college residents from participating in a crime investigation in a crime investigation and I do not